When this Court decided Reed v. Brunson, 527 So.2d 102
(Ala. 1988), I thought that the question of when and under what circumstances a workman could sue a co-employee had been laid to rest.
Today, the majority, by holding that a door locking mechanism on an automobile is a "safety guard or device" within the meaning of § 25-5-11(c)(2), reopens the debate, and, under the cloak of statutory construction, interprets the statute to apply to factual settings obviously not intended by our legislature. The holding today implicitly extends the definition of the term "safety guard or device" so that it conceivably encompasses every aspect of a piece of machinery that, in case of malfunction, could result in an injury to an employee, and thereby gives rise to a third-party lawsuit such as this one.
I believe that the majority applies the wrong rule of statutory construction to the statute and reaches a result not contemplated or intended by the lawmakers. I cannot accept the majority's conclusion that the failure of the workman's employer to repair a car door locking mechanism constituted a "willful and intentional removal from a machine of a safety guard or device provided by the manufacturer of the machine with knowledge that injury or death would likely or probably result from such removal," so as to authorize the maintenance of a third-party action against co-employees for "willful conduct," as defined in Ala. Code 1975, § 25-5-11(c)(2). Consequently, I must respectfully dissent.
The Court states that § 25-5-11(c)(2) should be "construed liberally to effect its beneficent purpose, which is to require industry to bear part of the burden of disability and death resulting from the hazards of industry." It may or may not be "beneficent" to authorize an injured employee to sue his or her co-employee; that is not the question. The question is whether the legislature has permitted such a suit under the facts of this case.
It seems obvious to me that the legislature never intended such an interpretation to be made of this statute. In fact, the history of co-employee suits in this State shows that the legislature has repeatedly attempted to limit co-employee suits, not beneficently provide for them.[4] In applying *Page 180 
this rule of statutory construction to this statute, the Court seems to ignore the fact that the legislature, for almost two decades, had been attempting to prohibit co-employee lawsuits, and, rightly or wrongly, the legislature clearly has not considered such suits to be "beneficent," but a "social evil."[5]
Although it is clear that the legislature authorized some co-employee lawsuits, it is equally plain that it did not intend to authorize one involving facts such as are presented here.
Although noting that this case is "conceptually different from the majority of workmen's compensation cases . . . which involve a safety guard or device on a machine in a factory-type, industrial setting," and although "not involving the more common machine in the more common industrial setting," the majority nevertheless holds specifically that "for purposes of construing these terms within § 25-5-11(c)(2) . . . a 'safety device' or 'safety guard' is that which is provided, principally, but not exclusively, as protection to an employee, which provides some shield between the employee and danger so as to prevent the employee from incurring injury while he is engaged in the performance of the service required of him by the employer: it is not something that is a component part of the machine whose principal purpose is to facilitate or expedite the work."
The majority seems to recognize that, under a fair reading, the words of the statute[6] do not encompass a third-party suit under these facts, and the majority fails to explain why the failure to repair a car door is "willful conduct" in this case, and the removal of guards, albeit not from the injury-producing "nip point," was not *Page 181 
"willful conduct" in Reed v. Brunson.[7]
By interpreting the statute as not barring this action under the facts of this case, I think that the majority takes what the legislature intended as a very narrow exception to co-employee immunity, and expands it so that the exception will swallow up the rule and, rightly or wrongly, the intent of the legislature, as expressed in Section 1 of the very Act this case construes, will have been completely ignored and disregarded.
STEAGALL, J., concurs.
[4] The history of co-employee lawsuits is well known, and such suits have received the attention of the legislature and this Court, especially in the last two decades. Insofar as I can tell, the question of the right of a co-employee to sue a fellow employee in a third-party action had not been considered until the question was presented to this Court for resolution in United States Fire Insurance Co. v. McCormick, 286 Ala. 531,243 So.2d 367 (1970). In that case, by an opinion authored by Merrill, J., and joined by Lawson, Harwood, Maddox, and McCall, JJ., the Court held that the legislature had not specifically mandated that co-employees could not be sued in third-party actions. The legislature quickly reacted to this holding and passed legislation to immunize co-employees from such suits. Act 1062, Acts of Alabama 1973, at pages 1771-72. That immunizing legislation was promptly attacked as being unconstitutional on the ground that the act signed by the governor materially differed from the bill passed by the legislature. A divided Court held that the 1973 Act was valid and that the defendants were entitled to summary judgment because the "plaintiff's injuries resulted from an accident which arose out of and in the course of his employment, and that by virtue of Tit. 26, § 312 [Code of Alabama of 1940], co-employees are not third-party tortfeasors against whom an action such as this can be brought." Childers v. Couey,348 So.2d 1349, 1352 (Ala. 1977) (Embry, J., joined by Torbert, C.J., and Bloodworth and Faulkner, JJ., with Almon, J., concurring in the result; Shores, J., dissenting with opinion, in which Maddox, J., joined; Jones and Beatty, JJ., dissenting with opinions); also see, Atchison v. Horton, 348 So.2d 1358
(Ala. 1977). The legislature, in 1975, amended § 312, Tit. 26 (which authorized the filing of third-party lawsuits), but continued to immunize co-employees from suit, as it had in the 1973 Act. See Act No. 86, 4th Ex.Sess. § 10, p. 2748, Acts of Alabama 1975. Even though the 1973 Act immunizing co-employees was upheld against the attack made upon it, an attack was made against the 1975 amendment in Grantham v. Denke, 359 So.2d 785
(Ala. 1978), on the ground that the legislature could not immunize co-employees from third-party lawsuits because of the provisions of Section 13 of Alabama's Constitution. A majority of this Court (opinion by Embry, J., with whom Bloodworth, Faulkner, Jones, Almon, Shores, and Beatty, JJ., joined; Maddox, J., dissenting, with which Torbert, C.J., concurred) held that the immunizing legislation was unconstitutional as violating Section 13 of the Alabama Constitution.
In 1984, the legislature again amended what is now § 26-5-11
to provide for co-employee immunity, except when an injury resulted from "willful conduct." Ala. Acts 1984, 2d Ex.Sess., No. 85-41, p. 44, § 3. That amendment was the subject of an attack on the ground that Section 13 of our Constitution prohibited the legislature from granting co-employees immunity. See Reed v. Brunson, 527 So.2d 102 (Ala. 1988), in which this Court upheld as constitutional the legislation now being construed.
[5] In Reed v. Brunson, the author of the majority opinion in this case said that "the Legislature does have the power to eliminate such co-employee suits in an attempt to eradicate orameliorate what it perceives to be a social evil." (Emphasis added.) 527 So.2d at 116. In that case, this Court set out in its entirety Section 1 of the Act we construe today. 527 So.2d at 11213. In its findings, the legislature specifically stated that co-employee lawsuits were "contrary to the intent of the legislature in adopting a comprehensive workers' compensation scheme and are producing a debilitating and adverse effect uponefforts to retain existing, and to attract new industry to thestate." In view of the clear expression of legislative intent to the contrary, it is difficult to understand why the majority calls such lawsuits "beneficent."
[6] The office of interpretation is not to improve a statute, but to expound it; and courts look for legislative intent in the language of a statute; that language may be explained, but it cannot be detracted from or added to. Alabama Indus. Bank v.State ex rel. Avinger, 286 Ala. 59, 237 So.2d 108 (1970).
It seems to me that a fair reading and reasonable interpretation of the legislative definition of "willful conduct" contained in the Code requires several facts to be shown: (1) a removal; (2) of a safety guard or safety device provided by the manufacturer of the machine; (3) such removal being willful and intentional; and (4) with the knowledge that injury or death would likely or probably result from such removal. I personally cannot find any facts in this record to show that the workman here has shown such "willful conduct" on the part of these defendants.
[7] If the definition of "safety guard or device" that the Court adopts today had been used in Reed v. Brunson, it would appear that the plaintiff in Reed stated a claim for relief, because that case involved a concrete mixing machine and the plaintiffs injury was caused by an unguarded "nip point." In Reed, this Court said the following:
 "The plaintiff argues, under § 25-5-11(c)(2), that the defendants willfully and intentionally removed a guard from the mixer that shielded the front of the drive wheel. As previously stated, there is evidence tending to show that such a guard had been removed from the mixer at some point prior to the plaintiffs injury. However, that guard did not shield the nip-point in which the plaintiff caught his hand. It appears undisputed in the record that at the time the mixer was installed at Faulkner Concrete Pipe Company, it was not equipped with side guards shielding the nip-point. Therefore, there is no evidence that the plaintiff's injury was proximately caused by the defendants' removal of a safety guard or device that had been provided by the manufacturer of the mixer."
527 So.2d at 120.